UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


<u>Lisa Joyce</u>

   v.                                  Civil No. 10-cv-035-JD
                                                 Opinion No. 2010 DNH 209

<u>Michael J. Astrue, Commissioner,</u>
<u>Social Security Administration</u>


<u>O R D E R</u>

Lisa Joyce seeks judicial review, pursuant to 42 U.S.C. 405(g), of the decision of the Commissioner of the Social Security Administration, denying her application for social security benefits. Joyce contends that the Administrative Law Judge ("ALJ") erred in concluding that she was able to return to her former work, as an accounts payable clerk. The Commissioner seeks an order affirming the decision.


<u>Background</u>

In her social security application, Lisa Joyce claimed to have been disabled from working beginning on January 1, 1997, and continuing through her last insured date, June 30, 2002. Joyce claims a disability due to her psychological impairments. Joyce also has diabetes. During the applicable period, Joyce was between twenty-seven and thirty-two years old.

Joyce was treated by Dr. Debra Drown, a psychologist, between 1992 and 2001, which also included periods of no treatment.  Joyce sought treatment because of psychological symptoms related to sexual abuse by a high school teacher from the time Joyce was fifteen until she was twenty-one.  Dr. Drown diagnosed Joyce with post-traumatic stress disorder.

At Joyce's six-week postpartum check after her son's birth in July of 1998, her obstetrician, Dr. Clemans, reported that Joyce denied signs or symptoms of postpartum depression or anxiety.  On January 2, 1999, Dr. Drown reported that Joyce was not working, that her diabetes was out of control, but that she had gone on a cruise and had a good time.  In September of 1999, Dr. Drown wrote that Joyce saw the former teacher, who had abused her, and that seeing him caused Joyce to flee in terror.  Joyce reported to Dr. Drown that when she was anxious and her blood sugar was high, she would feel violent.  In June of 2000, Dr. Drown noted that Joyce said her diabetic care was excellent and she felt great.  Joyce's sessions with Dr. Drown ended on June 22, 2000.  Joyce reported that she had received a financial settlement for the abuse and that she was not then looking for work.

In July of 2000, Dr. Clemans completed a six-week postpartum evaluation following the birth of Joyce's daughter.  Joyce denied

any postpartum depression and told Dr. Clemans that she never felt better. During the same time, Joyce told her endocrinologist that she felt the best she had in ten years. Joyce continued to report feeling well and being happy to treating physicians. Dr. Drown reported that at her final meeting with Joyce on June 11, 2001, Joyce's life was more settled but she complained of unhappiness, of distrusting other people, and of having periods of time loss and severe disassociation.

On June 12, 2007, Dr. Patricia Salt, a state consultant, completed a Psychiatric Review Technique Form based on a review of Joyce's medical records then on file, covering the period from January 1, 1997, to June 30, 2002. At that time, Joyce's administrative record did not include Dr. Drown's records. Dr. Salt noted that there was no medical evidence in the record to use to evaluate Joyce's allegations and marked a finding of insufficient evidence.

After an attorney began representing Joyce, he submitted additional medical records, including Dr. Drown's records. Dr. Drown submitted a letter to Joyce's attorney, dated July 18, 2009, in which she summarized her treatment of Joyce. Dr. Drown explained that she attributed the breaks in Joyce's treatment to

periods of disorganization in her life and to her severe psychiatric symptoms.

A hearing before an ALJ was held on July 30, 2009. Joyce testified about her education, background, and the symptoms of her psychological condition. Joyce said that she was married and divorced after she left college and married her second husband in 1997. After her son was born in 1998, Joyce said that her anxiety and PTSD were so bad that she could not leave the house. She also stopped taking medication. She said that her parents converted their home into a duplex to provide a place for Joyce to live with her two children and that they provided everything she and her children needed so that she would not have to leave the house.

When her children reached school age, Joyce's mother dealt with the school instead of Joyce. The family then moved to a new community "to get a clean slate." Joyce said that she had had episodes of being disruptive at the children's school and that because of nightmares about her children being abused, she had them sleep next to her bed. She stated that she had no social life or friends, that she shopped with her mother to avoid panic attacks, and that her parents did most of the activities with her children.

The ALJ issued a decision on August 24, 2009, finding that through her last-insured date, Joyce's anxiety disorder and post-traumatic stress disorder were severe impairments. The ALJ assessed Joyce's residual functional capacity, and found that she was able to perform a full range of work but should avoid socialization with the public. The ALJ concluded that Joyce was not disabled because she could return to her former work as an accounts payable clerk. On November 30, 2009, the Decision Review Board notified Joyce that review of her case had not been completed within the time allowed, which made the ALJ's decision the final decision of the Commissioner.

## Discussion

Joyce contends that in assessing her residual functional capacity, the ALJ was required to, but did not, consider whether she was able to attend work and sustain work activities on a regular basis in a work environment. She asserts that her own testimony and the opinions of her treating psychiatrist and Dr. Drown show that she was not able to do regular work activities. She further asserts that the ALJ substituted his own opinion for the opinions of her treating psychiatrist and Dr. Drown and faults the ALJ for not considering her medical records for treatment after her last insured date, June 30, 2002. The

Commissioner argues that the ALJ's decision is supported by substantial evidence.

In reviewing the final decision of the Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). The court defers to the ALJ's factual findings as long as they are supported by substantial evidence. § 405(g). "Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010).

Among the errors Joyce cites in the ALJ's decision is the weight the ALJ gave the evaluation done by Dr. Salt, the state medical consultant. The ALJ summarized his interpretation of Dr. Drown's medical records, concluding that Dr. Drown's notes were not consistent with Joyce's testimony about her symptoms. The ALJ then stated that "the state agency medical consultant's opinion that the medical evidence of records [sic] does not substantiate the claimant's allegations [] is given significant weight." Based on his evaluation of Dr. Drown's notes, the other medical evidence, and Joyce's testimony, the ALJ concluded that

6

Joyce had the residual functional capacity to do a full range of work at all exertional levels but that jobs should avoid socialization with the public.

As Joyce points out, Dr. Drown's records were not part of the administrative record when Dr. Salt completed the Psychiatric Review Technique Form. As a result, Dr. Salt did not evaluate Joyce's claims of disability in light of her treatment with Dr. Drown. Further, Dr. Salt did not find as the ALJ states, that the medical evidence did not substantiate Joyce's claims of impairment. Instead, Dr. Salt noted that there was <u>no</u> medical evidence in the record to use to evaluate Joyce's allegations, and, because of the absence of medical evidence, she marked a finding of insufficient evidence.

The Commissioner argues, nevertheless, that Dr. Salt's opinion provides substantial evidence to support the ALJ's residual functional capacity assessment. That argument, like the ALJ's reliance on Dr. Salt's opinion, is based on a mistaken understanding of the result Dr. Salt reported. The record included no medical opinion evaluating Joyce's functional capacity.

In the absence of an opinion addressing Joyce's functional capacity, the ALJ relied on his own interpretation of Dr. Drown's notes. Dr. Drown diagnosed Joyce with post-traumatic stress

7

disorder and made notes pertaining to her treatment. "As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination." Nguyen, 172 F.3d at 35. Because the ALJ gave Dr. Salt's opinion "significant weight" in concluding that Joyce was not disabled, the ALJ's decision was based in large part on an improper evaluation of the evidence and a mistaken view of Dr. Salt's opinion. Although some of Joyce's other medical providers indicated that she was doing better during the applicable period, their notes cannot provide substantial evidence of Joyce's functional capacity in light of her own testimony and the errors involved in the evaluation of Dr. Drown's notes and Dr. Salt's opinion.

To the extent Joyce attempts to base her claims on medical evidence that was generated after her last-insured date, such evidence has limited utility. Joyce would be entitled to benefits only if she could show that she was disabled for the requisite period beginning before June 30, 2002. See Mueller v. Astrue, 561 F.3d 837, 840 (8th Cir. 2009). However, medical evidence generated after her last-insured date that tends to show the severity of Joyce's impairments during the applicable period may be relevant to a determination of Joyce's residual functional

capacity for purposes of determining her claim.  See <u>Pollard v. Halter</u>, 377 F.3d 183, 193-94 (2d Cir. 2004).

Because the ALJ relied on his own interpretation of Dr. Drown's notes and misunderstood Dr. Salt's opinion following her review of the record evidence, substantial evidence is lacking to support his residual functional capacity evaluation.  Therefore, the case must be remanded for further consideration of the evidence and, if appropriate, augmentation of the record with a Psychiatric Review Technique Form completed following a review of all of the pertinent record evidence.

## Conclusion

For the foregoing reasons, the plaintiff's motion for an order reversing the Commissioner's decision (document no. 11) is granted.  The Commissioner's motion for an order affirming the decision (document no. 12) is denied.

The case is remanded under sentence four of § 405(g).  The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

December 9, 2010

cc:   Anthony B. Lamb, Esquire
      Robert J. Rabuck, Esquire
      D. Lance Tillinghast, Esquire